**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| LISA MICHELLE DONALDSON, | No. 1:16-cv-03156-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | ECF Nos. 18, 20 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 18, 20. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 18) and grants Defendant's motion (ECF No. 20).

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [she] is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on March 6, 2013, alleging a disability onset date of January 1, 2011. Tr. 196-210, 220. The applications were denied initially, Tr. 96-99, and on reconsideration, Tr. 102-13. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on November 6, 2014, Tr. 522-45, and at a supplemental hearing on January 14, 2015, Tr. 47-55. On February 18, 2015, the ALJ denied Plaintiff's claim. Tr. 26-46.

At the outset, the ALJ found that Plaintiff meets the insured status requirement of the Social Security Act through June 30, 2016. Tr. 31. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date. Tr. 31. At step two, the ALJ found Plaintiff has the following severe impairments: posttraumatic stress disorder (PTSD) in partial remission; attention deficit hyperactivity disorder (ADHD);

anxiety disorder, not otherwise specified (NOS) with history of panic attacks; bipolar II mood disorder; methamphetamine dependence in reported remission; alcohol dependence in reported remission; polysubstance abuse in reported remission; and borderline personality disorder. Tr. 31-32. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 32. The ALJ then concluded that Plaintiff has the following RFC:

> [T]he claimant has no exertional limitations. She can perform detailed and complex tasks. The claimant is limited to occasional and superficial public interaction. She is limited to superficial or casual interaction with coworkers and supervisors. The claimant is not well suited to be a member of a highly interactive or interdependent group.

Tr. 33. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 40. The ALJ found at step five that there are other jobs that exists in significant numbers in the national economy that Plaintiff could perform within her assessed RFC, such as kitchen helper, laundry worker II, industrial cleaner. Tr. 41. On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act during the adjudicative period. Tr. 41.

On June 30, 2016, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 18.  Plaintiff raises the following issues for this Court's review:

       1.  Whether the ALJ properly discredited Plaintiff's symptom claims; and

       2.  Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 18 at 6.

**DISCUSSION**

**A.  Medical Opinion Evidence**

Plaintiff faults the ALJ for discounting the medical opinions of examining psychologists Philip Barnard, Ph.D. and Roland Dougherty, Ph.D.  ECF No. 18 at 7-14.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

### 1. Dr. Barnard

Dr. Barnard performed a psychological evaluation in February 2013 and diagnosed Plaintiff with bipolar disorder, NOS; PTSD, chronic; and polysubstance dependence, in early full remission. Tr. 273-76. He assessed severe limitations in Plaintiff's ability to adapt to changes in a routine work setting, complete a normal

work day and work week without interruptions from psychologically based symptoms, and maintain appropriate behavior in a work setting.  Tr. 275.  He assessed marked limitations in her ability to understand, remember, and persist in tasks by following detailed instructions, perform routine tasks without special supervision, communicate and perform effectively in a work setting, and set realistic goals and plan independently.  Tr. 275.  The ALJ assigned the opinion "little weight," because (1) it was based on her unreliable self-reports, and (2) it lacked a rationale or a citation to objective evidence.  Tr. 38.  Both Plaintiff and Defendant agree that the ALJ was required to provide specific and legitimate reasons to discount the opinion.  ECF No. 18 at 7; ECF No. 20 at 12.

First, the ALJ gave the opinion little weight because it was "based, in large part, on the claimant's less than fully credible self-report."  Tr. 38.  A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  However, the ALJ must provide the basis for his conclusion that the opinion was based on a claimant's self-reports.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Here, the ALJ identified the basis for his conclusion that Dr. Barnard's opinion was based on Plaintiff's unreliable self-reports.  First, he found that Dr.

Barnard relied upon Plaintiff's reports of audio hallucinations, Tr. 38 (referring to Tr. 276 where Dr. Barnard determined Plaintiff had impaired perception based on her report that she hears voices). However, Plaintiff's reports of audio hallucinations are inconsistent in the record. In March 2012, Plaintiff told a treatment provider that her prior hallucinations were drug-related. Tr. 359. Plaintiff also has a history of denying the existence of hallucinations. *See* Tr. 280 (Jan. 2013, denying hallucinations); Tr. 281 (June 2012, denying hallucinations); Tr. 293 (Feb. 2012, denying hallucinations/delusions); Tr. 322 (Aug. 2012 denying hallucinations/delusions); Tr. 341 (April 2012, denying hallucinations/delusions); Tr. 492 (Sept. 2014 denying hallucinations).

Second, the ALJ noted that Dr. Barnard relied upon Plaintiff's self-reported short temper and low frustration tolerance as a basis for his conclusions. Tr. 38 (citing Tr. 273-76). The only time in the record Plaintiff lost her temper and behaved aggressively was in the context of the two failed attempts at inpatient substance abuse treatment, which she did not want to attend. Tr. 38. In February of 2012 while waiting for a bed at a rehab facility, Plaintiff expressed that she did not want to go to rehab and stated that she would make everyone there miserable and that she would throw a chair through the window in the first week. Tr. 390. When taken to this facility, she was refused admittance because of her behavior, which included profanity, yelling at staff, and storming out. Tr. 382. Following

this, Plaintiff repeatedly expressed that she did not want to attend inpatient

treatment, Tr. 368, 380, and upon entering treatment on March 26, 2012, was

described as "hostile and angry." Tr. 363. By April 3, 2012, Plaintiff was

discharged from treatment due to "disruptive, aggressive, and t[h]retening

behaviors. Five residents expressed safety concerns about her remaining in

treatment. When [Plaintiff] was approached about these concerns she escalated

and started yelling, punched a wall, and threw things around the rooms." Tr. 344.

Despite these two episodes, in which Plaintiff appeared to act in a preplanned,

disruptive manner, there is no other report in the record of Plaintiff losing her

temper.

Third, the ALJ noted that Plaintiff's "perception that she does not require

psychotropic medication indicates her symptoms are less troublesome than she

asserted at the evaluation with Dr. Barnard." Tr. 38. Plaintiff asserts that this is a

separate and unique reason provided by the ALJ and it fails to meet the specific

and legitimate standard because it is inconsistent with the ALJ's finding that

Plaintiff is less than fully credible concerning her symptom reports. ECF No. 18 at

10-11. However, this reason is further explanation by the ALJ supporting his

finding that Dr. Barnard relied upon Plaintiff's unreliable self-reports. The ALJ is

asserting that Plaintiff's reports of symptoms to Dr. Barnard were more severe than

her lack of medication usage indicates.

Therefore, the ALJ provided an adequate basis for his determination that Dr. Barnard's opinion was based on Plaintiff's unreliable self-reports. As such, this was a specific and legitimate reason to reject Dr. Barnard's opinion.

Next, the ALJ rejected the assessed limitations because Dr. Barnard "did not provide a significant rationale or cite any objective signs in support of the limitations he opined." Tr. 38. Factors relevant to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. 20 C.F.R. §§ 404.1527(c); 416.927(c); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported." *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

Here, Dr. Barnard's check-the-box form provided no explanation for his findings. He did not cite any clinical findings or test results. He cited two symptoms, mood swings and anger, both of which were based on Plaintiff's discredited self-reports and, as discussed above, her "anger" is not documented in the record as her outbursts appeared to be preplanned. Accordingly, this was a specific and legitimate reason to reject Dr. Barnard's opinion.

### 2. Dr. Dougherty

On December 3 and 9, 2014, Dr. Dougherty performed a consultative psychological examination of Plaintiff. Tr. 494-521. He reviewed a substantial amount of records, conducted a clinical interview, performed IQ testing, and diagnosed her with the following: PTSD, in partial remission; ADHD; anxiety disorder, NOS, with history of panic attacks; Bipolar II mood disorder, depressive phase; methamphetamine dependence, in reported sustained remission; alcohol dependence, in reported substantial remission; and polysubstance abuse, in sustained remission. Tr. 506-07. As part of his medical source statement, Dr. Dougherty stated the following:

> She is likely to have a good deal of difficulty maintaining regular attendance in the workplace at present, partly for motivational reasons, and partly because of her depression and anxiety. For the same reason she is likely to have difficulty completing a normal workday/workweek without interruption from her depression, anxiety, and PTSD symptoms. These same conditions are likely to make it quite difficult for her to deal with the stress encountered in the workplace.

Tr. 508. On an agency provided form, he assessed moderate limitations in Plaintiff's ability to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions. Tr. 519. He further assessed marked limitations in her ability to interact appropriately with the public, interact appropriately with supervisors, interact

appropriately with co-workers, and respond appropriately to usual work situations and to changes in a routine work setting.  Tr. 520.

Again, both parties assert that the ALJ was required to provide specific and legitimate reasons for discounting this opinion.  ECF No. 18 at 7; 20 at 16.  First, the ALJ gave the overall opinion "some weight' because Dr. Dougherty "indicated that claimant's problems persisting at tasks and maintaining regular attendance in a workplace were partly attributable to motivational problems."  Tr. 39.  Medical providers are not considered qualified to issue opinions based on non-medical factors.  *Sanchez v. Sec. of Health and Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987).  Dr. Dougherty stated that Plaintiff "may have difficulty in persistence on tasks due to her ADHD and motivational problems," and that "[s]he is likely to have a good deal of difficulty maintaining regular attendance in the workplace at preset, partially for motivational reasons, and partially because of her depression and anxiety."  Tr. 508.  Here, the ALJ agreed and determined that Plaintiff's motivation to work, or lack thereof, was not a result of her medical impairments, stating:

> [Plaintiff] is fairly young and comes from a family where her mother did everything for her [citing Tr. 487].  She said both of her parents spoiled her [citing Tr. 497].  The claim was ill equipped to exercise responsibility adult judgment when she left home and became involved with illegal drugs and abusive boyfriends, which has not helped her develop any sense of personal responsibility.  Overall, it appears that if [Plaintiff] were motivated to maintain employment she could.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

Tr. 39.  Therefore, the ALJ's reason, that Dr. Dougherty predicated part of his opinion on Plaintiff's motivation, which was a non-medical factor, meets the specific and legitimate standard."

The ALJ then assigned "less weight" to Dr. Dougherty's opinion, that Plaintiff was moderately limited in the abilities to understand, remember, and carry out complex instructions and to make judgements on complex work related decisions as expressed on the agency suppled form, because of motivational issues. Tr. 40.  As discussed above, the medical providers are not considered qualified to issue opinions based on non-medical factors.  Therefore, the ALJ's reason for rejecting this portion of the opinion is legally sufficient.

The ALJ assigned "some weight" to Dr. Dougherty's opined social limitations on the agency's form agreeing that Plaintiff "would clearly do better in a position that does not involve intense interaction with others," but not finding limitations as severe as Dr. Dougherty's opinion.  Tr. 40.  The ALJ found that Plaintiff could "tolerate occasional and superficial public interaction and superficial or casual interaction with coworkers and supervisors" given her "typically appropriate interactions with treatment providers except for the two failed attempts at inpatient substance abuse treatment and the fact that she had boyfriends and stayed with various friends during the relevant period."  *Id*.  First,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

Plaintiff failed to challenge this portion of the ALJ's determination. ECF No. 18 at 12-13. As such, the Court is not required to address them. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (The Court does not address findings that the claimant failed to argue with specificity in his briefing.). Second, had Plaintiff properly challenged this reasons, inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). As addressed above, Plaintiff's actions surrounding the admittance to inpatient treatment appear to be inconsistent with the rest of the record and perhaps premeditated. Therefore, the ALJ's conclusion that Plaintiff maintained good relationships with providers and was able to maintain romantic and plutonic relationships is supported by substantial evidence and meets the specific and legitimate standard.

Next, the ALJ assigned "limited weight" to the portion Dr. Dougherty's medical source statement finding that Plaintiff would likely have difficulty completing a normal workday/workweek without interruption from her depression, anxiety and PTSD symptoms and that these conditions would likely make it difficult to deal with the stress encountered in the workplace. Tr. 40. The ALJ's basis for this conclusion was that Plaintiff "apparently had the resources to obtain medications once she began receiving state assistance following the evaluation

with Dr. Barnard, but has elected not to take any psychotropic medication. This indicates she did not perceive her mood or anxiety symptoms as troublesome enough to warrant medication." Tr. 40.

Generally, the fact that a condition can be remedied by medication is a legitimate reason for discrediting an opinion. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, because Plaintiff failed to consistently take her prescribed medication, there is no record supporting the notion that Plaintiff's impairments would improve with the use of medications. Therefore, this reason fails to meet the specific and legitimate standard. However, any error resulting from the ALJ's reliance on this reason is harmless because Dr. Dougherty limited Plaintiff's ability to complete a normal workday/workweek and deal with stress for two reasons (1) her motivation and (2) her anxiety and depression. Tr. 508. As addressed above, Dr. Dougherty's opinion was provided lesser weight because of his reliance on Plaintiff's motivation and medical providers are not considered qualified to issue opinions based on non-medical factors.

As such, the ALJ provided legally sufficient reasons to provide lesser weight to Dr. Dougherty's opinion.

**B. Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to provide specific, clear and convincing reasons for discrediting her symptom claims.  ECF No. 18 at 14-20.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptom alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim*, 763 F.3d at 1163 (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas,* 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to

conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The ALJ found that Plaintiff's impairments could reasonably be expected to result in the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible," stating "the degree of debility she has alleged is not borne out by the objective evidence of record or by the consistency of her own reported and demonstrated functional ability." Tr. 34. The ALJ addressed additional, more specific reasons: (1) Plaintiff's lack of medication usage renders her reports less persuasive, Tr. 36; (2) Plaintiff's activities are inconsistent with the reported severity of symptoms, Tr. 37; and (3) Plaintiff's inconsistent statements concerning drug and alcohol usage renders her self-reports less than fully credible, Tr. 37.

*1. Lack of Medication*

The ALJ found Plaintiff "has not perceived a need for psychotropic medication since she obtained state assistance, which renders the severity of symptoms she has alleged less persuasive." Tr. 36. The type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (2011).[1] The lack of prescription medication is an appropriate consideration in determining credibility. *See Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir. 1998) (noting claimant's use of nonprescription medication as a factor supporting credibility determination). Moreover, in the absence of "medical evidence" showing that Plaintiff's resistance to treatment is caused by her mental illness, the ALJ is permitted to reasonably infer that a lack of treatment is attributable to personal preference and is inconsistent with a Plaintiff's complaints. *Molina*, 674 F.3d at 1114.

_____

[1] As of March 27, 2017, C.F.R. §§ 1529(c) and 416.929(c) were amended. The ALJ rendered his decision on February 18, 2015, thus, the Court applies the versions effective June 13, 2011.

1    The ALJ noted that in early 2012, Plaintiff received medications and

2    reported no side-effects.  Tr. 36 (citing Tr. 372).  As of March 2012, a treatment

3    note indicates that she was more stable and improved, but was dealing with

4    situational anger about her living situation and having to attend inpatient substance

5    abuse treatment.  Tr. 36 (citing Tr. 374-75).  The ALJ further noted that in June

6    2012, Plaintiff was willing to engage in counseling and group therapy.  Tr. 35

7    (citing Tr. 336).  In December 2012, Plaintiff wanted counseling, but not

8    medications.  Tr. 35 (citing Tr. 331).  The ALJ specifically noted that in February

9    2013, Plaintiff was approved to receive financial assistance, which would permit

10   more treatment "if desirable."  Tr. 36 (citing Tr. 326).  Plaintiff continued

11   counseling, but as of December 2014, was not receiving any psychotropic

12   medications.  Tr. 36 (citing Tr. 494).

13        Plaintiff challenges the ALJ's finding, contending the ALJ failed to consider

14   Plaintiff's reasons for not receiving psychotropic medication, including her

15   inability to pay for medication and her mental impairments.  ECF No. 18 at 16-17.

16   Here, the ALJ specifically noted that Plaintiff did not take medication after she

17   "was approved for state financial assistance," Tr. 36, indicating the ALJ considered

18   and rejected Plaintiff's contention that her lack of medication was due to an

19   inability to pay for it.  *See* Tr. 411 (Plaintiff has assistance from state, Medicaid,

20   which will assist with payment for mental health treatment services).  Plaintiff has

also alleged that she forgets to take her medication as a result of her mental health impairments. ECF No. 18 at 16-17. There is substantial evidence in the record that Plaintiff adamantly opposed taking medications, which undermines her allegations that she forgets. *See, e.g.*, Tr. 331 (Dec. 12, 2012 treatment note, Plaintiff stated "she doesn't want any medications," she only wanted therapy); Tr. 425 (Jan. 7, 2013 treatment summary, although Plaintiff said she "forgets" to take her medication, upon further questioning, treatment provider concluded "the truth of the matter is she is making a choice not to take it."). The ALJ reasonably concluded that Plaintiff not taking psychotropic medication undermines her symptom complaints. This was a specific, clear and convincing reason to discredit her symptoms.

### 2. Plaintiff's Activities

Next, the ALJ found Plaintiff's symptom reports less than fully credible because the record does not support her claims that she has difficulty dealing with people to the severity she alleges. Tr. 37. An ALJ may cite inconsistencies in a claimant's statements and between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony. *Bray*, 554 F.3d at 1227.

Here, the ALJ noted that in a February 2013 psychological evaluation, Plaintiff reported that she had problems with her temper and would pound walls and yell at people. Tr. 37 (citing Tr. 273). However, as addressed above, the

record is absent of any evidence of Plaintiff losing her temper except for the two

attempts at rehab, which are arguably preplanned outbursts.

Additionally, the ALJ noted that throughout the record, Plaintiff reported

activities that were inconsistent with her claimed difficulty in dealing with others:

she reported having a boyfriend, Tr. 331; she moved to Spokane with a new

boyfriend, Tr. 433; and she reported getting along with her bosses, coworkers, and

customers, Tr. 498. Tr. 37. Plaintiff asserts, as an alternative to the ALJ's reliance

on these activities as inconsistent with her reports, that these activities actually

show her emotional instability and impulsive actions. ECF No. 18 at 19.

However, if the evidence is susceptible to more than one rational interpretation, the

court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at

1097. Therefore, the ALJ's second reason meets the specific, clear and convincing

standard.

### 3. *Inconsistent Statements Regarding Substance Abuse*

Next, the ALJ discounted Plaintiff's symptom testimony because she made

inconsistent statements regarding her substance abuse. Tr. 37. In evaluating the

credibility of symptom testimony, the ALJ may utilize ordinary techniques of

credibility evaluation, including prior inconsistent statements. *See Smolen v.

Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Conflicting or inconsistent statements

concerning drug use can contribute to an adverse credibility finding. *Thomas*, 278

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24

F.3d at 959.  In support of this finding, the ALJ cited Plaintiff's testimony during the November 2014 hearing that she had last used illicit drugs in October 2013, which was consistent with her report to the consultative examiner in December 2014.  Tr. 37 (citing Tr. 536, 497).  However, the treatment records indicate that she relapsed and used methamphetamine in late January 2014 and refused substance abuse treatment.  Tr. 37 (citing Tr. 450).  Moreover, in July 2014, she told a treatment provider she had last used methamphetamine a few months prior, which would have been April or May 2014.  Tr. 37 (citing Tr. 435).  The ALJ also noted that Plaintiff provided inconsistent and inaccurate information regarding why she was removed from an inpatient substance abuse treatment facility.  Tr. 35.  The ALJ's conclusion that she inconsistently reported to treatment providers and the ALJ her most recent drug activity is supported by the record.

Plaintiff does not challenge the finding that Plaintiff made inconsistent statements regarding her substance abuse, instead contends it was error to rely on those inconsistent statements as contrary to S.S.R. 16-3p.  ECF No. 18 at 18.  First, S.S.R. 16-3p is not applicable here because it became effective March 28, 2016, after the date of the ALJ's decision.  *See Garner v. Colvin*, 626 Fed. Appx 699, 701 (9th Cir. 2015).  Moreover, Plaintiff's claim that this finding is not probative of Plaintiff's credibility about her symptom complaints is unavailing; particularly here, where Plaintiff gave inconsistent statements regarding her substance abuse

during the period in which she was alleging disability due to mental impairments. Finally, Plaintiff alleges for the first time in the reply brief, ECF No. 21 at 5-6, that the ALJ improperly relied on Plaintiff's drug use and relapses, as opposed to her inconsistent statement. Plaintiff's allegation is unsupported. The ALJ concluded Plaintiff's "inconsistent statement concerning when she last used methamphetamine show her self-report is not entirely reliable." Tr. 37.

As such, this was a clear and convincing reason to discredit Plaintiff's symptom claims.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 18) is **DENIED.**

2. Defendant's motion for summary judgment (ECF No. 20) is **GRANTED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE THE FILE.**

DATED September 29, 2017.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 26